**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION**

| | | |
|---|---|---|
| Gregory B. Holmes, | ) | Civil Action No.: 0:17-cv-03194-JMC |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **ORDER AND OPINION** |
| Town of Clover and Donnie Grice, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff Gregory B. Holmes filed this action against his former employer, Defendant Town of Clover ("Clover"), alleging that he was subjected to discrimination because of his race in violation of Title VII of the Civil Rights Act of 1964. (ECF No. 15 at 4 ¶ 30–5 ¶ 37.) Additionally, Holmes alleges a claim against Clover pursuant to 42 U.S.C. § 1983 for violation of the First Amendment right to free speech; and state law claims against Clover for wrongful discharge in violation of public policy; against Clover and Defendant Donnie Grice (individually, "Grice," and together with Clover, "Defendants") for defamation, and against Grice for tortious interference with contract. (ECF No. 1 at 5 ¶ 38–9 ¶ 69.)

This matter is before the court on Defendants' Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 32.) In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02(B)(2)(g) D.S.C., the matter was referred to the United States Magistrate Judge for pretrial handling. On June 25, 2019, the Magistrate Judge issued a Report and Recommendation in which she recommended that the court grant Defendants' Motion for Summary Judgment as to all of Holmes' claims. (ECF No. 38 at 23.) Holmes filed objections to the Magistrate Judge's Report and Recommendation, which are presently before the court. (ECF No. 40.) For the reasons set forth below, the court **ACCEPTS IN PART** the Magistrate Judge's

recommendation; **GRANTS** Defendants' Motion for Summary Judgment only as to Holmes' claims for Title VII race discrimination, violation of the First Amendment right to free speech, and defamation; and **REMANDS** Holmes' claims of wrongful discharge in violation of public policy and tortious interference with contract to the York County Court of Common Pleas for further proceedings.

## I.     RELEVANT BACKGROUND TO PENDING MOTION

The facts of this matter are discussed in the Report and Recommendation. (*See* ECF No. 38 at 2–7.) The court concludes, upon its own careful review of the record, that the Magistrate Judge's factual summation is accurate and incorporates it by reference. The court will only reference herein additional facts viewed in the light most favorable to Holmes that are pertinent to the analysis of his claims.

Holmes is an African-American male. (ECF No. 36-6 at 2 ¶ 4.) Clover is a town of five thousand (5,000) residents located in northwestern York County, South Carolina.[1] Clover, SC, https://www.visityorkcounty.com/plan/our-cities/clover/ (last visited Sept. 5, 2019). Grice was mayor of Clover from approximately 2001 to 2005 and 2007 to 2017. (ECF No. 36-5 at 3:18–24.)

Holmes began his employment with Clover on January 9, 2001 as a program coordinator and was later promoted to the position of director of the recreation department on November 15, 2004. (ECF Nos. 36-2 at 2, 36-6 at 2 ¶ 3, 36-7 at 2.) In Clover, the recreation department oversees youth and adult sports to include the hiring of officials and the maintenance of athletic fields. (ECF No. 32-2 at 4:15–6:5.) As director, Holmes supervised approximately ten (10) other recreation department employees. (*Id.* at 6:6–8.) On July 25, 2005, Holmes was evaluated and given an

---

[1] As observed by the Magistrate Judge, Clover has "a council form of government [] pursuant to S.C. Code Ann. § 5-11-30, in which the mayor serves as one of seven members." (ECF No. 38 at 3.) "[The] Council oversees the Town's departments and supervises the town administrator." (*Id.*)

overall performance rating of excellent. (ECF No. 36-2 at 2 ("Greg has put forth tremendous efforts toward improving our sports programming and hope[s] to continue the improvements.").)

In April 2006, Allison Harvey, a white female, became the town administrator and Holmes' supervisor. (ECF Nos. 36-4 at 4:9–11, 36-6 at 2 ¶ 5, 36-7 at 2.) After Harvey became his supervisor, Holmes "never received performance evaluations" and "never received any written discipline during [][his] tenure other than the written discipline underlying [][his] termination." (ECF Nos. 32-2 at 3:2–6, 36-6 at 2 ¶ 8.) However, in 2009, Harvey did counsel Holmes in 2009 to not conduct tax preparation services in his office. (ECF No. 32-2 at 14:4–19.)

Holmes asserts that he experienced race discrimination in his job starting on or about April 20, 2015. Specifically, Holmes states:

> Mayor Grice coached little league baseball for a team that participated in the Defendant Town's recreation department league. Mayor Grice became upset when a player on his team was ejected for running through the catcher at a game on April 20. I was not present at this game. Instead of following proper channels, the Mayor went directly to my boss Ms. Harvey about this particular call, and I was called into a meeting with the two of them. At that meeting I informed Mayor Grice that the Umpire made a judgment call which was consistent with little league rules. Mayor Grice retorted that "this is not a judgment call . . . a judgment call is what [Michael Slager] did in North Charleston." Michael Slager is the white North Charleston police officer who had just (at the time the comment was made) gunned down a black arrestee, Walter Scott, in the back following a traffic stop. I found this commentary to be extremely inappropriate and racially offensive.

(ECF No. 36-6 at 2 ¶ 10.) Because of Grice's alleged dissatisfaction with the results of the April 20, 2015 meeting, Holmes contends that Grice initiated the following incidents:

- In July 2015, he instructed Harvey to direct Holmes "to hold townhall style meetings twice during the 2015 baseball season for he and other coaches to express their concerns about the recreation department and little league baseball." (ECF No. 36 at 5 (referencing ECF No. 36-8 at 3).)

- In July 2015, he directed Harvey "to provide him the name of everyone [][Holmes]'s Department sent an email to about the [townhall] meeting." (ECF No. 36 at 5–6 (referencing ECF No. 36-8 at 3).)

- He accused Holmes of "'calling [his] son a liar' when Grice formally protested a

call by an umpire to eject his son for slinging or flicking his baseball bat after hitting a double." (ECF No. 36 at 6 (referencing ECF No. 36-5 at 16:8-17:25).)

- On May 21, 2015, in response to his wife's Facebook statement that "I now know the problem with youth sports: ADULTS!!!," he indirectly attacked Holmes' "skills as a supervisor in a comment reading: 'In most cases it is adults with big egos and unorganized adults supervising them.'" (ECF No. 36 at 6 (quoting ECF No. 36-9 at 2).)

Subsequent to the aforementioned events, Holmes asserts that in early 2016, Grice initiated steps that would ultimately lead to the termination of Holmes' employment. After a specific town council meeting, Grice commented to Councilmen Daniel Todd Blanton, Jay Dover, and Wes Spurrier that Holmes has "got to go." (ECF No. 36-10 at 4:1. *See generally id.* at 3:9–6:3.) Then, during a meeting between Grice and Harvey on January 29, 2016, Spurrier appeared and presented information that "he believed ([he] had been told) [] Holmes was doing taxes for others using computers and office space during normal office hours" . . . [and] "Wes suggested getting [IT employee] Dee Wise to look at computer activity." (ECF No. 36-11 at 2.) Thereafter, in response to Harvey's request, Wise conducted a search of Holmes' desktop computer for the time period starting on February 11, 2016, and ending on March 4, 2016, and she concluded that the computer contained numerous interactions with websites such as taxact.com, turbotax, onlinetaxes.yorkcounty.com, and taxactonline.com. (ECF No. 32-7 at 1 ¶ 4–2 ¶ 6.)

On March 11, 2016, Harvey made the decision to terminate Holmes observing in the Record of Disciplinary Action as follows:

Greg has been conducting a private tax preparation business at his office at the Community Center and during office hours. He has seen "customers" and used Town equipment (computer) to do the work. This is a violation of the Town's personnel policy regarding Secondary Employment. Greg was warned once before about such activity. Another contributory factor to this termination is his insubordinate behavior and poor judgement in making inappropriate and disparaging comments about Mayor Grice to Recreation Department staff which has created an extremely tense work environment for staff.

(ECF No. 36-12 at 2.) Harvey replaced Holmes with Joe Ross, a white male. (ECF No. 32-4 at

13:17–14:2.)

As a result of the aforementioned, Holmes filed an action against Clover on October 12, 2017, in the Court of Common Pleas for York County (South Carolina) alleging claims for race discrimination, violation of civil rights, and defamation. (ECF No. 1-1 at 8 ¶ 29–10 ¶ 55.) After removing the matter to this court on November 27, 2017 (ECF No. 1), Clover answered the Complaint on November 29, 2017, denying its allegations. (ECF No. 4.) Thereafter, Holmes was granted leave by the court and filed an Amended Complaint (ECF No. 15) on February 28, 2018, and a Second Amended Complaint (ECF No. 26) on June 4, 2018, which Defendants answered denying their allegations. (ECF Nos. 17, 27.) In both the Amended Complaint and the Second Amended Complaint, Holmes alleged claims of race discrimination, violation of his First Amendment rights, wrongful discharge, and defamation against Clover and claims of defamation and tortious interference with contract against Grice. (*See* ECF Nos. 15, 26.) On February 15, 2019, Defendants filed their Motion for Summary Judgment. (ECF No. 32.) Holmes filed opposition to the Motion for Summary Judgment on March 15, 2019, to which Defendants filed a Reply to Plaintiff's Response to the Motion for Summary Judgment on March 22, 2019. (ECF Nos. 36, 37.)

In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 D.S.C., the Magistrate Judge issued her Report and Recommendation on June 25, 2019, recommending that Defendants' Motion for Summary Judgment be granted as to all of Holmes' claims. (ECF No. 38.) On July 9, 2019, Holmes filed objections to the Report and Recommendation, specifically asserting that the Magistrate Judge erred in the following ways:

1. The Magistrate, on race discrimination, erred in finding the record conclusively revealed another, nondiscriminatory reason for Plaintiff's termination other than the reason suggested by Defendant.

2. The Magistrate should, after recommending summary judgment on Plaintiff's

federal claims, have recommended remanding the remainder of this action to state Court.

3. Absent a remand and with respect to wrongful discharge, Plaintiff's termination at the insistence of Defendant Grice violated the statutory weak mayor form of government in the Defendant Town and thereby amounted to an actionable wrongful discharge in violation of public policy.

4. With respect to tortious interference with contract, the Magistrate[']s ruling that *Angus*, a civil conspiracy holding, would apply to a tortious interference claim, was error.

(ECF No. 40 at 4.)

The court heard argument from the parties on Holmes' objections at a hearing on September 6, 2019. (ECF No. 49.) The court considers the merits of Holmes' objections below.

## II.    JURISDICTION

This court has jurisdiction over Holmes' Title VII claim via 28 U.S.C. § 1331, as the claim arises under a law of the United States, and also via 42 U.S.C. § 2000e–5(f)(3), which empowers district courts to hear claims "brought under" Title VII. The court also has jurisdiction over this matter pursuant to § 1331 based on Holmes' First Amendment claim against Clover under 42 U.S.C. § 1983, which permits an injured party to bring a civil action against a person who, acting under color of state law, ordinance, regulation, or custom, causes the injured party to be deprived of "any rights, privileges, or immunities secured by the Constitution and laws." *Id.* The court may properly hear Holmes' state law claims based on supplemental jurisdiction since these claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). *See also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) (finding supplemental jurisdiction allows parties to append state law claims over which federal courts would otherwise lack jurisdiction to federal claims, so long as "[t]he state and federal claims . . . derive from a common nucleus of operative fact"); *De La Rosa v. Reliable, Inc.*, 113 F. Supp. 3d 1135, 1152 (D.N.M. 2015) ("The court can then exercise

supplemental jurisdiction over other claims and parties that 'form part of the same case or controversy under Article III . . . .'" (citing 28 U.S.C. § 1367, U*nited Mine Workers*, 383 U.S. at 725)).

## III.    LEGAL STANDARD

A.    The Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The court reviews de novo only those portions of a magistrate judge's report and recommendation to which specific objections are filed, and reviews those portions which are not objected to - including those portions to which only "general and conclusory" objections have been made - for clear error. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005); *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983); *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). "[I]n the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond*, 416 F.3d at 315 (quoting Fed. R. Civ. P. 72 advisory committee's note). The court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. *See* 28 U.S.C. § 636(b)(1).

B.    Summary Judgment Generally

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248–49 (1986).

A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. *Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denial of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249.

## IV.    ANALYSIS

A.    The Report and Recommendation

In the Report and Recommendation, the Magistrate Judge first addressed Holmes' Title VII race discrimination claim. Upon her review, the Magistrate Judge determined that even though there was no dispute regarding Holmes' ability to demonstrate a prima facie case of race discrimination,[2] his claim fails at the pretext level because Holmes' evidence does not demonstrate either that (1) he received different treatment from similarly-situated comparators outside the

---

[2] Pursuant to the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Magistrate Judge observed that a prima facie case of race discrimination required Holmes to show that "1) he is a member of a protected class; 2) he suffered an adverse employment action; 3) he was performing his job duties at a level that met his employer's legitimate expectation at the time of the adverse employment action; and 4) the position remained open or was filled by similarly-qualified applicants outside the protected class." (ECF No. 38 at 9 (citing *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007)).)

protected class or (2) there is evidence of pretext based on "Harvey's failure to interview him regarding the investigation, his positive work history, her admission that she had previously received reports that he continued to use the office for his tax preparation business, Grice's involvement in the events leading to his termination," and "Grice's alleged comment about Slager." (ECF No. 38 at 10, 11; *see generally id.* at 10–15.)  In support of her conclusion, the Magistrate Judge specified that Holmes did not present "any valid comparators; therefore, the only evidence of race discrimination is an alleged remark by Grice in 2015 that Michael Slager had made a judgment call." (ECF No. 38 at 14.)  Accordingly, because she found that "no rational factfinder could conclude Plaintiff's termination was motivated by race discrimination," the Magistrate Judge recommended granting Defendants' Motion for Summary Judgment on Holmes' claim of race discrimination.  (*Id.* at 14–15.)

Next, the Magistrate Judge addressed Holmes' First Amendment claim.  The Magistrate Judge decided that there was no evidence to support a finding that Holmes' termination was related to his speech concerning "(1) Grice's improper use of his position as Mayor to interfere with recreation department matters, and (2) the public concern of the need to secure baseball fields." (ECF No. 38 at 17.)  As to the former, the Magistrate Judge observed that "there is nothing in the speech before the court showing Grice acted improperly in his mayoral capacity, as opposed to his capacity as a private citizen." (*Id.*)  As to the latter, the Magistrate Judge observes that the public concern issue emphasizes "the staff's perception of Plaintiff as vindictive in directing them to reserve fields before Grice could was revealed when employees were questioned about problems between Plaintiff and Grice." (*Id.* at 18 (citing ECF Nos. 32-5, 32-6).)

As to Holmes' claim for defamation, the Magistrate Judge observed that Holmes was a public figure and his claim fails because he cannot show that Grice's comment on his wife's

Facebook posting contained a "provably false factual connotation." (ECF No. 38 at 20.) The Magistrate Judge further observed that the claim is time-barred under the two-year statute of limitations provided by the South Carolina Tort Claims Act, S.C. Code Ann. § 15-78-110 (2019), and even if it is not, Holmes' evidence does not demonstrate that Clover ratified the statement. (ECF No. 38 at 20.)

As to Holmes' wrongful discharge claim, the Magistrate Judge recommended granting the Motion for Summary Judgment concluding that he failed to demonstrate a cognizable public policy violation because neither of the statutes cited by Holmes "prohibit[] mayors and council members from being involved in employment decisions." (*Id.* at 21 (referencing S.C. Code Ann. §§ 5-11-30, -40) (2019).)

Finally, in regard to Holmes' tortious interference with contract claim, the Magistrate Judge recommended that the Motion for Summary Judgment should be granted because "Plaintiff was a public official, [and] Grice could not interfere with Plaintiff's contract either in his capacity as Mayor or as a member of the public." (*Id.* at 22 (citing *Angus v. Burroughs & Chapin Co.*, 628 S.E.2d 261, 262 (S.C. 2006); *Saxton v. Town of Irmo Police Dep't*, No. 3:15-1244-JFA-TER, 2015 WL 1373740, at *5 (Dec. 3, 2015 D.S.C.)).)

B.     The Court's Review

In objecting to the foregoing, Holmes asserts that the court should reject the Report and Recommendation and deny Defendants' Motion for Summary Judgment as to his race discrimination, wrongful discharge, and tortious interference with contract claims.[3] The court considers Holmes' objections relevant to his contested claims below.

_____

[3] In a footnote, Holmes expressly states that he does not object to the Magistrate Judge's recommendations regarding his claims alleging violation of his First Amendment rights and defamation. (ECF No. 40 at 1 n.1.) Accordingly, because the court does not discern clear error in the Magistrate Judge's Report and Recommendation assessing these claims, the court accepts the

*1. Race Discrimination*

**a) Legal Standard**

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . . ." 42 U.S.C. § 2000e-2(a)(1). A plaintiff can establish a claim of discrimination under Title VII in one of two ways, either by directly showing that discrimination motivated the employment decision, or, as is more common, by relying on the indirect, burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Pursuant to this burden-shifting framework, the plaintiff first establishes a prima facie case of discrimination. *Merritt v. Old Dominion Freight*, 601 F.3d 289, 294 (4th Cir. 2010). Absent direct evidence, the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly-situated employees outside the protected class, or there is some other evidence giving rise to an inference of unlawful discrimination. *Coleman v. Md. Ct. App.*, 626 F.3d 187, 190 (4th Cir. 2010); *Cason v. S.C. State Ports Auth.*, C/A No. 2:11-2241-RMG-BM, 2014 WL 588031, at *4 (D.S.C. Jan. 7, 2014) (citations omitted). "The employer may then rebut the prima facie case by showing that there was a legitimate non-discriminatory reason for the adverse action, after which the burden shifts back to the plaintiff to show that those reasons are pretextual." *Hammett v. S.C. Dep't of Health & Envtl. Control*, C/A No. 3:10-932-MBS-SVH, 2013 WL 1316440, at *5 (D.S.C. Jan. 25, 2013) (citing *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005)). *See also Wilson v. Genesis Healthcare, Inc.*, C/A No. 4:17-

---

Report and grants Defendants' Motion for Summary Judgment as to Holmes' claims for violation of his First Amendment rights and defamation.

cv-3318-RBH-TER, 2019 WL 3208842, at *5 (D.S.C. July 1, 2019) ("Once Defendant has met its burden of production by producing its legitimate, nondiscriminatory reason, the sole remaining issue is 'discrimination vel non.' In other words, the burden shifts back to Plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by Defendant is not its true reason, but was pretext for discrimination or retaliation." (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000))).

"The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered." *Anderson v. Ziehm Imaging, Inc.*, C/A No. 7:09-02574-JMC, 2011 WL 1374794, at *5 (D.S.C. Apr. 12, 2011) (citing *Stewart v. Henderson*, 207 F.3d 374, 376 (7th Cir. 2000)). "The ultimate question is whether the employer intentionally discriminated and proof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that [plaintiff's] proffered reason . . . is correct . . . [i]t is not enough to disbelieve the [employer]." *Love-Lane v. Martin*, 355 F.3d 766, 788 (4th Cir. 2004) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146-47 (2000)) (internal citations omitted). Rather, the plaintiff must demonstrate that a reasonable jury could "believe [his] explanation of intentional race discrimination." *Id.*

### b) Holmes' Objection

In his objections, Holmes takes issue with the Magistrate Judge's citation to *Reeves* in concluding that this matter is one of "the limited number of 'instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory.'" (ECF No. 40 at 6 (citing ECF No. 38 at 13–14 (quoting *Reeves*, 530 U.S. at 148[4]))).) He asserts that the

---

[4] In discussing judgment as a matter of law in the context of pretext, the Court in *Reeves* observed as follows:

Magistrate Judge erred by relying on "caselaw relevant to a prima facie case with respect to the comparator analysis and law on causation in the retaliation context to disregard the above evidence of an overall racial animus." (*Id.* (citing ECF No. 38 at 14–15).)  In this regard, Holmes asserts that with reference to *Reeves*, "the only basis for granting summary judgment in this case would be if the 'record conclusively revealed some other, nondiscriminatory reason'" and "the record before the [c]ourt does not conclusively demonstrate that another reason, which the Magistrate termed 'a personality conflict' between Plaintiff and Defendant Grice (the Town's former Mayor), was the sole, real reason for his termination." (*Id.* at 9 (citing *Reeves*, 530 U.S. at 148).)

Therefore, Holmes asserts that the Magistrate Judge "interpose[d] her judg[]ment for that of the jury." (*Id.* at 7 (citing *Reeves*, 530 U.S. at 153–54[5]).)  Holmes argues this is error because

---

> Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory.  For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.  *See Aka v. Washington Hospital Center*, 156 F.3d, at 1291–1292; *see also Fisher v. Vassar College*, 114 F.3d, at 1338 ("[I]f the circumstances show that the defendant gave the false explanation to conceal something other than discrimination, the inference of discrimination will be weak or nonexistent").  To hold otherwise would be effectively to insulate an entire category of employment discrimination cases from review under Rule 50, and we have reiterated that trial courts should not "'treat discrimination differently from other ultimate questions of fact.'" *St. Mary's Honor Center, supra*, at 524, 113 S. Ct. 2742 (quoting *Aikens*, 460 U.S., at 716, 103 S. Ct. 1478).

530 U.S. at 148.

[5] Holmes also cites to the following portion from Justice Ginburg's concurrence in *Reeves* as support for his arguments:

> I write separately to note that it may be incumbent on the Court, in an appropriate case, to define more precisely the circumstances in which plaintiffs will be required to submit evidence beyond these two categories in order to survive a motion for

"*Reeves* makes it clear that '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" (*Id.* at 11 (quoting *Reeves*, 530 U.S. at 150-151).) Holmes contends that the jury should have an opportunity to consider his evidence to include Grice's Slager comment, relevant comparators he and Councilwoman Debbie Williams identified, and observations by Councilwoman Williams and Councilman Todd Blanton regarding Clover's racially disparate employment practices. (*E.g.*, ECF No. 36 at 11–14.)

### c) Discussion[6]

---

judgment as a matter of law. I anticipate that such circumstances will be uncommon. As the Court notes, it is a principle of evidence law that the jury is entitled to treat a party's dishonesty about a material fact as evidence of culpability. *Ante*, at 2108. Under this commonsense principle, evidence suggesting that a defendant accused of illegal discrimination has chosen to give a false explanation for its actions gives rise to a rational inference that the defendant could be masking its actual, illegal motivation. *Ibid.* Whether the defendant was in fact motivated by discrimination is of course for the finder of fact to decide; that is the lesson of *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S. Ct. 2742, 125 L.Ed.2d 407 (1993). But the inference remains—unless it is conclusively demonstrated, by evidence the district court is required to credit on a motion for judgment as a matter of law, *see ante*, at 2110–2111, that discrimination could not have been the defendant's true motivation. If such conclusive demonstrations are (as I suspect) atypical, it follows that the ultimate question of liability ordinarily should not be taken from the jury once the plaintiff has introduced the two categories of evidence described above. Because the Court's opinion leaves room for such further elaboration in an appropriate case, I join it in full.

*Reeves*, 530 U.S. at 154–55.

[6] At the outset, the court adopts the following summation of *Reeves* stated in *Walker v. Progressive Cas. Ins. Co.*, C/A No.: 3:17-cv-01935-JMC, 2019 WL 1090723, at *5 (D.S.C. Mar. 8, 2019):

In *Reeves*, the Supreme Court clarified the respective evidentiary burdens of opposing parties under its *McDonnell Douglas* framework. 530 U.S. at 142–49. Specifically, the Court stated that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148 (emphasis added). The Court went on to state that there "will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder

Upon her review, the Magistrate Judge concluded that even though she agreed that "there are facts sufficient to suggest Plaintiff's tax preparation business was not the true reason for his termination" (*see* ECF No. 38 at 12), summary judgment was appropriate regarding Holmes' race discrimination claim because "no rational factfinder could conclude Plaintiff's termination was motivated by race discrimination." (*Id.* at 14.) The Magistrate Judge's conclusion is disputed by both parties. On one hand, Holmes argues that "[t]he Magistrate [Judge], having found pretext where Plaintiff had otherwise established his prima facie case, had a reasonable legal basis to find that triable issues for the jury existed (as to the motivation for Plaintiff's termination) and to recommend the denial of Defendant's motion [for summary judgment." (ECF No. 40 at 6 (citing *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 226 (4th Cir. 2019) ("Haynes has presented sufficient evidence to establish a prima facie case of racial discrimination and to demonstrate

---

could conclude that the action was discriminatory." *Id.* (emphasis added). By way of example, the Court provided the following:

> For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

*Id.* (emphasis added) (citation omitted). The Court further explained that: "Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Id.* at 148–49 (emphasis added). In contrast to Plaintiff's attenuated position, *Reeves* holds that a plaintiff's prima facie case may sometimes overcome a defendant's motion for summary judgment, but not in all instances. *See id. Reeves* does not stand for the proposition that a plaintiff always overcomes summary judgment, thereby reaching a jury, by simply establishing a prima facie case or by rebutting a defendant's legitimate, nondiscriminatory reason. *See id.*

*Walker*, 2019 WL 1090723, at *5.

pretext. The district court, therefore, erred in granting summary judgment in favor of WCI")).)
On the other hand, Defendants assert that the finding of pretext was erroneous because "the proper
view is that, even if a general adversarial relationship [between Holmes and Grice] was a
motivating factor in the discharge, this is only a 'minor discrepancy' from the reasons explicitly
given for the discharge and, therefore, does 'not cast doubt on the explanation's validity . . ..'"
(ECF No. 41 at 2 (quoting *Mitchell v. Sec'y of Veterans Affairs*, 467 F. Supp. 2d 544 (D.S.C.
2006)).)

In a Title VII case, the ultimate issue is whether "the defendant intentionally discriminated
against the plaintiff." *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 377 (4th Cir. 1995) (quoting
*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). "The plaintiff must put forward
evidence rebutting each of the nondiscriminatory reasons the employer articulates." *Wallace v.
Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001). *See also Rutherford v. Harris Cty., Tex.*,
197 F.3d 173, 184 (5th Cir. 1999) ("Rutherford "must provide some evidence, direct or
circumstantial, to rebut each of the employer's proffered reasons and allow the jury to infer that
the employer's explanation was a pretext for discrimination." (citation omitted)); *Clay v. Holy
Cross Hosp.*, 253 F.3d 1000, 1007 (7th Cir. 2001) (a plaintiff "must present facts to rebut each and
every legitimate non-discriminatory reason advanced by [][her employer] in order to survive
summary judgment" (citation omitted)); *Spencer v. Town of Bedford*, 2019 WL 2305157, at *5
(W.D. Va. May 23, 2019) (Spencer "'may not recast an employer's legitimate, non-discriminatory
reason or substitute [her] business judgment for that of the employer, but must instead meet each
reason head on and rebut such reason.'" (citation omitted)). "[T]o establish that a proffered reason
for the challenged action was pretext for discrimination, the plaintiff must prove 'both that the
reason was false, and that discrimination was the real reason' for the challenged conduct." *Jiminez*,

57 F.3d at 378 (citation omitted).

In reviewing the Report, the Magistrate Judge clearly explains why there is no real substantive evidence of discriminatory animus in the record to suggest that Clover's alternative reason for terminating Holmes, *i.e.*, his adversarial relationship with Grice, was related to his race. (*See* ECF No. 36-12 at 2 ("Another contributory factor to this termination is his insubordinate behavior and poor judgement in making inappropriate and disparaging comments about Mayor Grice to Recreation Department staff which has created an extremely tense work environment for staff.").) Therefore, the court cannot agree with Holmes either that he has rebutted this reason for his termination or that the Magistrate Judge impermissibly weighed evidence as Holmes suggests in his objection to reach the conclusion that "there is overwhelming evidence of a non-discriminatory reason for Plaintiff's termination—Plaintiff's relationship with Grice, who appears to have exerted greater influence than the mayoral position assumed, was highly contentious, causing stress in the recreation department and resulting in greater scrutiny of Plaintiff." (ECF No. 38 at 15.) Accordingly, the court finds that summary judgment is appropriate for Clover as to Holmes' Title VII race discrimination claim.

### 2. *Supplemental Jurisdiction as to Remaining Claims*

#### a) **Legal Standard**

Generally, a federal district court may exercise supplemental jurisdiction over state law "claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). However, a district court is not obligated to exercise supplemental jurisdiction, and a district court "may decline to exercise supplemental jurisdiction over a claim" upon dismissal of "all claims over which it has original jurisdiction." *See* § 1367(c) (providing that a court "may decline to exercise supplemental

jurisdiction over a claim . . . if: (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction"). In this regard, after dismissing all of the federal claims in a case, a district court has three options: (1) "dismiss the pendent state law claims without prejudice"; (2) "remand the state[]law claims to the state court"; or (3) "decide the merits of the state law claims." *Farlow v. Wachovia Bank of N.A., N.A.*, 259 F.3d 309, 316–17 (4th Cir. 2001).

A district court has broad discretion in deciding whether to dismiss, remand, or retain a case after relinquishing all federal claims in the case.[7] *See, e.g.*, *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639–41 (2009); *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). In determining whether to retain, remand, or dismiss the state law claims, a district court should examine the "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan*, 58 F.3d at 110 (citing *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277, 1284 (3d Cir. 1993)). "There are *no* situations wherein a federal

_____

[7] The court observes that even though the majority of the Fourth Circuit's cases on this issue are unpublished, the Fourth Circuit tends to be consistent in its holdings. In the vast majority of cases, the Fourth Circuit holds that the district court did not abuse its discretion in deciding to dismiss, remand, or retain the state law claims. Rather, the Fourth Circuit tends to focus its analysis on whether the district court recognized it had discretion and considered whether or not to dismiss, retain, or remand the state law claims. *See Farrell v. Macy's Retail Holdings, Inc.*, 645 F. App'x 246, 249 (4th Cir. 2016) (vacating a district court's dismissal of the state law claims because the court's order was silent regarding its consideration of whether to exercise supplemental jurisdiction over the state law claims.). Thus, regardless of whether the court decides to remand or retain the state law claims, the court must provide an analysis of its decision to exercise supplemental jurisdiction in its order. *Id.* (citing *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 366 (4th Cir. 2012) (stating that a "district court's failure to recognize that it had discretion is an abuse of discretion")).

court *must* retain jurisdiction over a state law claim, which would not by itself support jurisdiction." *Shanaghan*, 58 F.3d at 110 (4th Cir. 1995) (alteration in original). *See also Carnegie-Mellon Univ.*, 484 U.S. at 350 n.7 ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state[]law claims.").

### b) Holmes' Objection

Because the court agrees with the Magistrate Judge that Clover is entitled to summary judgment on Holmes' Title VII race discrimination claim, Holmes "objects to the Magistrate [Judge]'s failure to recommend remanding Plaintiff's remaining state claims" because there are no other federal claims remaining in the action.[8]  (ECF No. 40 at 12.)  Holmes argues that in his claims for wrongful discharge in violation of public policy and tortious interference with contract, he presents "novel issue[s] under state law" which are better suited for state court.  (*Id.* at 14 (citing, *e.g.*, *Cunningham v. Aiken Reg'l Med. Ctrs., Inc.*, C/A No. 1:07-2746-RBH, 2009 WL 2243766, at *2 (D.S.C. July 24, 2009) ("As this issue may be a novel issue under state law, this Court finds that the determination of whether the facts presented in the case at bar fit the public policy exception and whether summary judgment should be granted are better left to the state court, now that the federal claims have been dismissed.")).)  In support of the aforementioned argument, Holmes points out that (1) as to his wrongful discharge in violation of public policy claim, the allegations of lawbreaking regarding Grice's outsized influence over Holmes' discharge require interpretation of the statutory limitations of Clover's council form of government; and (2) the

---

[8] After recommending that summary judgment be granted as to Holmes' race discrimination and First Amendment claims, the Magistrate Judge did not undertake a supplemental jurisdiction analysis.  As previously stated, *see supra* at n.7, the court is required to provide an analysis of its decision regarding supplemental jurisdiction.

Magistrate Judge erred in relying on the "civil conspiracy holding in *Angus v. Burroughs & Chapin Co.*," 628 S.E.2d 261, 262 (S.C. 2006) to recommend dismissal of his tortious interference with contract claim when no South Carolina appellate court has addressed that issue.  (ECF No. 40 at 19.)  Accordingly, Holmes contends that "the Magistrate [Judge], after disposing of the federal questions in this matter, should have avoided '[n]eedless decisions of state law' by remanding this case to the state court."  (*Id.* at 15 (citing *Gibbs*, 383 U.S. at 726 (1966)).)

      **c) Discussion**

      Upon consideration of the foregoing, the court observes that there are both reasons to exercise supplemental jurisdiction and reasons to decline to exercise supplemental jurisdiction over Holmes claims for wrongful discharge in violation of public policy and tortious interference with contract.  As for reasons to exercise supplemental jurisdiction, the court observes this case is approaching two (2) years of age and all of Holmes' claims against Defendants are currently the subject of the same pending Motion for Summary Judgment.  Additionally, if summary judgment is denied, jury selection and the trial of this matters would presumably be scheduled to begin by the end of 2019.

      However, as for reasons to not exercise supplemental jurisdiction, the court observes that it has granted summary judgment on all claims over which it has original jurisdiction.  Moreover, state law claims generally involving non-diverse parties are the kind of disputes over which federal courts typically decline to exercise jurisdiction.  *E.g.*, *Smith v. Ray*, 409 F. App'x 641, 651 (4th Cir. 2011) (finding no abuse of discretion in dismissal without prejudice of state tort claims upon dismissal of federal claims).  The court is further persuaded by Holmes that his remaining state law claims raise novel and/or complex issues of state law because they require interpretation of the statutory law of municipalities in relation to an alleged violation of public policy and a

determination regarding the first-time application of the South Carolina Supreme Court's decision in *Angus* to a claim for tortious interference with contract. (ECF No. 40 at 14.) Finally, it appears to the court that the current posture of these matters compels the abstinence of supplemental jurisdiction because the cases are now truly a local dispute between the Town of Clover and its current mayor. (*See* ECF No. 38 at 1 n.1); *see also Miller v. D.C. Water & Sewer Auth.*, No. 17-cv-0840 (KBJ), 2018 WL 4762261, at *15 (D.D.C. Oct. 2, 2018) ("It is a common practice of the judges in this district to decline to exercise supplemental jurisdiction over local matters if the federal claims over which the court has original jurisdiction are dismissed." (citation omitted)).

Therefore, after balancing the relevant factors, the court finds that they weigh in favor of it declining to exercise supplemental jurisdiction over Holmes' remaining state law claims for wrongful discharge in violation of public policy and tortious interference with contract. *See Gunsay v. Mozayeni*, 695 F. App'x 696, 703 (4th Cir. 2017) (holding that when the remaining state law claims raise complex or novel issues of state law and arise under a dispute in which federal courts traditionally have declined jurisdiction over, "coupled with the fact that the district court properly dismissed Plaintiffs' federal claims that served as the basis of the court's original jurisdiction, [] these two bases provide[] an adequate basis for the district court to exercise its discretion to decline to retain jurisdiction over Plaintiffs' state[]law claims" (citing *Farlow*, 259 F.3d at 316–17)). Accordingly, the court sustains Holmes' objection that "[t]he Magistrate [Judge] should, after recommending summary judgment on Plaintiff's federal claims, have recommended remanding the remainder of this action to state Court." (ECF No. 40 at 4.)

## V. CONCLUSION

Upon careful consideration of the entire record, the court hereby **GRANTS** the Motion for Summary Judgment of Defendants Town of Clover and Donnie Grice only as to Plaintiff Gregory

Holmes' claims alleging Title VII race discrimination, violation of the First Amendment right to free speech, and defamation. (ECF No. 32.) The court **DECLINES** to exercise supplemental jurisdiction over Holmes' remaining state law claims for wrongful discharge in violation of public policy and tortious interference with contract. The court **REMANDS** Holmes' claims of wrongful discharge in violation of public policy and tortious interference with contract to the York County Court of Common Pleas for further proceedings. The Clerk of Court is directed to mail a certified copy of this Order of remand to the Clerk of Court of the York County Court of Common Pleas.

As a result of the foregoing, the court **ACCEPTS IN PART** the Magistrate Judge's Report and Recommendation (ECF No. 38) and incorporates it herein by reference.[9]

**IT IS SO ORDERED.**

_J. Michelle Childs_
United States District Judge

September 10, 2019
Columbia, South Carolina

---

[9] As a result of the court's decision to not exercise supplemental jurisdiction over Holmes' remaining state law causes of action, the court was unable to consider and/or adopt the Magistrate Judge's recommendation as to the claims for wrongful discharge in violation of public policy and tortious interference with contract.